UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**NOT FOR PUBLICATION**

WALTER DIQUE,

          Plaintiff,

v.

JOHN MULVEY, CLINTON PAGANO, GLEN VONA,

          Defendants

Civil Action No. 04-563(KSH)

**OPINION**

**KATHARINE S. HAYDEN, U.S.D.J.**

    Plaintiff Walter Dique ("Dique") has filed a civil rights action pursuant to 42 U.S.C. § 1983 against former New Jersey State Police Superintendent Clinton Pagano[1] and troopers John Mulvey and Glen Vona (collectively "defendants")[2], alleging various constitutional violations arising out of a traffic stop in 1990. This Court dismissed his complaint in 2004 (docket entry #19), and he appealed. Based upon Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety-Division of State Police (Gibson I), 411 F.3d 427 (3d Cir. 2005), the Third Circuit granted a limited remand to determine if Dique's fourth and fourteenth amendment claims are barred by the statute of limitations. This Court ruled the claims survived, and discovery was going forward when the Supreme Court decided Wallace v. Kato, 127 S. Ct. 1091 (2007). Based on that decision, defendants

---

[1] There is a discrepancy as to Pagano's first name. Defendant's papers refer to him as "Carl Pagano" but the Pretrial order names him as "Clinton Pagano." A review of the New Jersey State Police website shows that Clinton Pagano served as superintendent of the State Police at the time of Dique's arrest. See New Jersey State Police, Colonel's Row, http://www.nj.gov/njsp/about/col.html#9 (last visited April 8, 2008).

[2] During the course of the litigation, Dique reached settlement with several defendants, including the State of New Jersey and New Jersey State Police (docket entry # 58), former State Police Superintendent Carson Dunbar (docket entry # 61), and trooper Manuel Sanchez (docket entry # 75). The only defendants remaining in the case are Mulvey, Pagano, and Vona.

have filed these dispositive motions. (Docket entries # 65 and 66.) For the reasons stated below, the Court grants defendants' motions.

## FACTUAL BACKGROUND

The following facts are taken from the Court's December 23, 2004 opinion (docket entry # 18) unless otherwise noted. Dique's claims stem from his allegation that he was the victim of unlawful racial profiling. On January 7, 1990 at approximately 10 p.m., Dique, who is a native of Colombia, was driving a livery car for hire on the New Jersey Turnpike when his car was stopped by defendant John Mulvey ("Mulvey"), a state trooper. Mulvey found drugs in the car and arrested Dique, who was ultimately convicted in State court on charges of illegal possession of drugs with intent to distribute. On June 11, 1999, he was sentenced to a 15 year prison term. Defendant Glen Vona ("Vona") helped transport Dique and his passengers back to the State Police barracks. (Pretrial Order 4.) Defendant Clinton Pagano ("Pagano") was Superintendent of the New Jersey State Police at the time of Dique's arrest. (Pretrial Order 4.)

On April 19, 2002, the State moved to vacate Dique's conviction and dismiss the indictment (Levine Cert. Ex. D (Order Vacating Conviction and Dismissing Indictment)) on grounds that "colorable issues of racial profiling" existed. (Pl. Br. Ex. D. (Affidavit in support of motion to vacate convictions)). Dique was released from prison on April 22, 2002. (Compl. ¶ 16.)

## PROCEDURAL HISTORY

Dique filed his federal complaint on February 9, 2004, raising claims based upon Sections 1983, 1985(2)(3), 1988(a)(b) of the United States Code and the First, Fifth, Sixth, Eighth and Fourteenth Amendments. (Docket entry # 1.) He also raised several state law claims, including common law claims of assault and battery, false arrest, and false imprisonment. In addition, he asserted state statutory claims under the New Jersey Law Against Discrimination and N.J.S.A. 52:4C-1 et. seq. (mistaken imprisonment). On May 24, 2004, defendants filed a motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Docket entry # 9.) The Court granted the motion to

2

dismiss on December 23, 2004.  (Docket entry # 19.)  Dique filed his notice of appeal to the Third Circuit on January 14, 2005.  (Docket entry # 20.)

On December 5, 2005, the Third Circuit granted both parties' motion for a "Limited Remand to District Court as to Dismissal of Appellant's Fourth Amendment False Arrest Claim and Fourteenth Amendment Selective Enforcement Claim as Barred by the Statute of Limitations." (Docket entry # 26.)  The Court then stayed the matter "pending the resolution of the Petition for Certiorari in <u>Gibson v. Superintendent of New Jersey</u> [<u>Gibson I</u>], 411 F.3d 427 (3d Cir. 2005), or a decision by the United States Supreme Court on the merits of the appeal."  (Docket entry # 27.)  The Court vacated the stay on April 7, 2006 after the Supreme Court denied certiorari in the <u>Gibson</u> case.  (Docket entry # 30.)

In September 2006, two summary judgment motions were filed on behalf of the defendants. (Docket entries # 40, 45.)  The Court was asked to decide if Dique's fourth and fourteenth amendment claims could go forward in light of <u>Gibson</u>.  In October 2006, the Court ruled that Gibson did not prevent the complaint from proceeding on the merits.  (Docket entry # 51.)  The parties went forward with discovery.

In the midst of discovery, the Supreme Court of the United States decided <u>Wallace v. Kato</u>, 127 S. Ct. 1091 (2007).  On August 13, 2007, Pagano filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing that plaintiff's fourth and fourteenth amendment claims were barred by the statute of limitations based upon the Court's holding in <u>Wallace</u>.  (Docket entry # 65.)  Mulvey and Vona filed a summary judgment motion pursuant to Fed. R. Civ. P. 56, relying on the papers and arguments submitted by Pagano.  (Docket entry # 66.)  After filing their briefs, both sides brought to the Court's attention (docket entries # 76, 77, 78) decisions of other judges in this District ruling on cases similarly remanded from the Third Circuit, which are discussed below.

## STANDARD

Pagano filed a motion to dismiss pursuant to Rule 12(b)(6), while Mulvey and Vona filed a motion for summary judgment pursuant to Rule 56. Rule 12(d) states:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

In addition to the complaint, the Court reviewed documents attached to the certification of Benjamin Levine, submitted with Dique's brief in opposition to the motion. (Docket entry # 68.) These exhibits include: (1) Excerpt of Walter Dique's direct testimony at his trial, March 4, 1999 (Ex. A); (2) Excerpts from the suppression hearing in State v. Dique, March 12, 1998 (Ex. B); (3) Excerpt of Mulvey's direct testimony at Dique's trial, March 3, 1999 (Ex. C); (4) Order vacating conviction and dismissing indictment, April 19, 2002 (Ex. D); (5) Certification of Walter Buckman in support of Dique's post-conviction relief motion, July 24, 2001 (Ex. E); (6) Undated memo from Sgt. T. Gilbert to Colonel C.A. Williams regarding Justice Department inquiry into racial profiling allegations (Ex. F); (7) Memo from Deputy Director Debra L. Stone to Director Paul H. Zoubek entitled "Problems and Issues in Division of State Police," February 22, 1999 (discussing internal issues, including profiling) (Ex. G); (8) Memo from Deputy Director Debra L. Stone to Director Paul H. Zoubek entitled "Interview with State Police," March 5, 1999 (detailing information learned from trooper interview) (Ex. H); (9) document entitled "Occupant identifiers for a possible drug courier," February 8, 1999 (Ex. I); and (10) "Lesson Plan: Training Curriculum for 1989 In-service training (Jamaican Possess)" (Ex. J). Pagano had an opportunity to respond to these documents in his reply brief. Mulvey and Vona filed a summary judgment motion and were on notice that matters outside the pleadings could be considered. Since the Court is considering matters outside the pleadings and the parties had a reasonable opportunity to present materials pertinent to the motions, the Court will convert Pagano's motion to dismiss into a motion for summary judgment pursuant to Rule 12(d). See Hilfirty v. Shipman, 91 F.3d 573, 578 (3d Cir. 1996).

Summary judgment is appropriate where there is no genuine issue of material fact to be resolved and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## DISCUSSION

The Court has a limited remand from the Third Circuit to decide two issues: whether the statute of limitations bars Dique's false arrest claim brought under the fourth amendment and his selective enforcement claim brought under the fourteenth amendment. In these summary judgment motions, the fight is about when Dique's claims of false arrest and selective enforcement accrued.

"[T]he accrual date of a § 1983 cause of action is a question of federal law." Wallace v. Kato, 127 S. Ct. 1091, 1095 (2007). Accrual occurs when "the plaintiff has a complete and present cause of action." Id. (internal quotations omitted). Accrual happens "even though the full extent of injury is not then known or predictable." Id. at 1097. The length of the limitations period is determined by looking at the state's limitations period for personal-injury torts. Id. at 1094. In New Jersey, the statute of limitations on personal injury torts is two years. N.J.S.A. 2A:14-2 ("Every action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this State shall be commenced within two years next after the cause of any such action shall have accrued").

A federal court will look to state law for determining when a limitations period should be tolled. Wilson v. Garcia, 471 U.S. 261, 269 (1985). In New Jersey, a statute of limitations can be tolled based upon statute or equitable principles. See N.J.S.A. 2A:14-21(minority status or insanity); N.J.S.A. 2A:14-22 (nonresidency of the defendant); Freeman v. State, 347 N.J. Super. 11, 31 (App. Div. 2002)(articulating situations when equitable tolling may be applied; see infra).

Of considerable moment in this case and others in this District, see infra, is the decision in Heck v. Humphrey, 512 U.S. 477 (1994), which put a twist on the issue of accrual and created what is known as the "Heck bar." Where a claim would impugn an underlying conviction or sentence,

5

Heck defers the time of accrual until the conviction or sentence has been invalidated. Id. at 487. Dique and other racial profiling plaintiffs rely on the "Heck bar" to render their false arrest and/or selective enforcement claims timely, arguing that accrual occurs at the time their indictments were dismissed.

### A. Fourth Amendment Claim

Defendants maintain that Wallace v. Kato bars Dique's false arrest claim based on its holding that "the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." Wallace, 127 S. Ct. at 1100. Applied here, this means that Dique's arrest in January 1990 predates the filing of his federal lawsuit in February 2004 by over 14 years.

In his opposition brief, "[p]laintiff acknowledges that Wallace does affect plaintiff's Fourth Amendment claim." (Pl. Br. 1.) He argues, however, that because the State withheld information about its racial profiling practices, the Court should equitably toll the statute of limitations. From the opposition brief:

> While the Wallace decision makes clear that the accrual of a claim under the Fourth Amendment occurs at the time of the wrongdoing, it is equally clear that a claim, the basis of which is hidden from the potential claimant by fraud or corrupt means, does not accrue until the claimant has a reasonable opportunity to discover the wrongdoing which gives him the claim.

(Pl. Br. 13.)

In Freeman v. State, 347 N.J. Super. 11 (App. Div. 2002), the New Jersey Appellate division set forth circumstances where equitable tolling is warranted.

> Equitable tolling may be applied where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. A statute of limitations is not permitted to be used as a sword by an adversary whose misconduct prevents a claimant from filing within the limitation period. Another circumstance in which equitable tolling has been held to apply is where a plaintiff has in some extraordinary way been prevented from asserting his rights. Finally, equitable tolling may be appropriate where a plaintiff has timely asserted his rights mistakenly by either defective pleading or in the wrong forum.

6

Id. at 31 (internal quotations and citations omitted).  If state tolling rules contradict federal law or policy, federal tolling doctrine may apply.  Likewise, in Lake v. Arnold, 232 F.3d 360 (3d Cir. 2000), the court noted that federal law allows tolling of a statute of limitations if (1) "a defendant actively misleads a plaintiff with respect to [his/her] cause of action"; (2) "plaintiff has been prevented from asserting [his/her] claim as a result of other extraordinary circumstances"; or (3) "plaintiff asserts [his/her] claims in a timely manner but has done so in the wrong forum."  Id. at 370 n.9.  New Jersey courts have noted that "absent a showing of intentional inducement or trickery by a defendant, the doctrine of equitable tolling should be applied sparingly and only in the rare situation where it is demanded by sound legal principles as well as the interests of justice."  Freeman, 347 N.J. Super. at 31; see also Wallace, 127 S. Ct. at 1100 ("Equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs.").

The means by which the State of New Jersey disseminated information concerning racial profiling practices does have relevance to Dique's lawsuit, and the Court addresses it below.  But lack of transparency or cover-up or dissembling about racial profiling, assuming for purposes of argument that such occurred, does not bear on the accrual of the false arrest claim.  Third Circuit law makes this very clear.  In Montgomery v. De Simone, 159 F.3d 120 (3d Cir. 1998), Rosemary Montgomery was arrested and charged with speeding, drunk driving, and refusing to take a breathalyzer test.  Id. at 122.  She provided evidence at her municipal court hearing that she was not drunk or speeding and the arresting officer had propositioned her.  Id. at 122-23.  Although she was found guilty, the Law Division reversed the convictions and thereafter Montgomery sued the arresting officer in federal court for false arrest and false imprisonment.  Id. at 123.  The district court ruled that the lawsuit was time-barred, and the Third Circuit affirmed, reasoning that the limitations period began to run on the night of Montgomery's arrest and detention because that is when she "reasonably knew of the injuries that form the basis of [her] section 1983 claims."  Id. at 126.  The court noted that "[a] claim for false arrest, unlike a claim for malicious prosecution, covers

damages only for the time of detention until the issuance of process or arraignment, and not more." Id.

Wallace reasoned the same way in discussing accrual of false arrest/false imprisonment claims.[3]  Looking to treatises for the essence of the claim, to wit that "false imprisonment consists of detention without legal process," the Court held that "a false imprisonment ends once the victim becomes held pursuant to such process—when, for example, he is bound over by a magistrate or arraigned on charges."  Wallace, 127 S. Ct. at 1096 (emphasis in the original).  At that point, the unlawful detention becomes a basis for damages for a different tort, malicious prosecution.  Id.

To state a Fourth Amendment claim for false arrest, a plaintiff must allege two elements: (1) that there was an arrest; and (2) that the arrest was made without probable cause.  See Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988).  "Probable cause to arrest requires more than mere suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt. Rather, probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested."  Orsatti v. New Jersey State Police, 71 F.3d 480, 482-83 (3d Cir. 1995)(internal citations omitted).  The relevant inquiry becomes whether the plaintiff had sufficient information on the night of his/her arrest to state a claim for false arrest, and Wallace (and Gibson I before it) makes crystal clear that the answer in the federal courts is:  Yes.

The foregoing demonstrates that the information Dique has submitted about racial profiling is not germane to the accrual of his false arrest claim.  In January 1990, he knew he was arrested and he knew the circumstances of the traffic stop.  Even though "the full extent of injury" might not have been available, i.e., what he alleges now to be a pernicious discriminatory practice motivating the stop and prosecution, indictment, conviction, and a long prison sentence flowing therefrom, the

---

[3] The Court noted that "[f]alse arrest and false imprisonment overlap; the former is a species of the latter."  Wallace, 127 S. Ct. at 1095.

8

facts necessary to prove an arrest <u>without probable cause</u> (as opposed to <u>with</u> discriminatory animus) were available to Dique.

Dique is not entitled to equitable tolling on this claim, and the Court finds that under <u>Wallace,</u> his false arrest claim is time-barred. The statute of limitations on that claim, which accrued at the time of arrest, began to run once he was "detained pursuant to legal process." <u>Wallace</u>, 127 S. Ct. at 1095, 1100. Because Dique filed his claim on February 9, 2004, some 14 years after his arrest, his claim is barred by the statute of limitations.

### B. **Fourteenth Amendment claim**

#### 1. Current Jurisprudence

Following <u>Wallace</u>, which addressed claims based on false arrest and false imprisonment only, 127 S. Ct. 1094 n.1, courts were presented with the issue of whether <u>Wallace</u> applied to selective enforcement claims. In <u>Richards v. County of Morris</u>, 07-1995, 2007 U.S. Dist. LEXIS 49290 (D.N.J. July 5, 2007)(Martini, J.), the court dismissed a selective enforcement claim based on racial profiling as untimely because "<u>Wallace</u> effectively supersedes the Third Circuit's reasoning in <u>Gibson</u>, and . . . <u>Heck</u> is inapplicable here." <u>Id.</u> at *15-16. In reaching this result, the court did not distinguish between false arrest and selective enforcement claims, concluding that both claims accrued on the date of the unlawful search and arrest. <u>Id.</u> at *16. Significantly, the court noted that "[p]laintiff alleges no facts or extraordinary circumstances that would permit statutory or equitable tolling under either New Jersey or federal law. Rather, plaintiff pleads only ignorance of the law and his incarceration, neither excuse being sufficient to relax the statute of limitations bar in this instance." <u>Id.</u> Even if the claim did not accrue until his conviction was reversed by the state court on May 31, 2002, the court concluded the action was still time-barred because Richards' action was filed five years after his conviction was reversed. <u>Id.</u> at *17. "Plaintiff's complete lack of diligence in pursing his claims all of these years strongly militates against equitable tolling of the statute of limitations." <u>Id.</u>

Clarke v. New Jersey State Police, 03-3240, 2007 U.S. Dist. LEXIS 93573 (D.N.J. Dec. 20, 2007)(Chesler, J.), involved another case of racial profiling that was before the court on a similar limited remand from the Third Circuit. Id. at *3-5. The plaintiff asserted both false arrest and selective enforcement claims. Analyzing the false arrest claim, the court found that the "Third Circuit's reasoning in [Gibson I] does not survive the Supreme Court's language in Wallace." Id. at *13. Applying Wallace, the court determined that the statute of limitations began to run on Clarke's false arrest claim when he appeared before a magistrate shortly after his arrest. Id. at *14. Since Clarke filed his claim almost five years after his arrest; did not raise any facts or allegations that would permit statutory or equitable tolling under New Jersey or federal law; and did not allege intentional trickery or inducement by the defendant, the court dismissed the false arrest claim as barred by the statute of limitations. Id.

Turning to the selective enforcement claim, the Clarke decision noted that "[n]o binding precedent exists on whether [Wallace] affects when the statute of limitations on selective enforcement claims begins to run." Id. at *18(internal citations omitted). After reviewing decisions in this District that take divergent paths, see Richards and Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety-Division of State Police (Gibson II), 02-5470, 2007 U.S. Dist. LEXIS 22871 (D.N.J. March 29, 2007), the court concluded that "the tort action for selective enforcement accrues upon the search and arrest that was allegedly made pursuant to selective enforcement of the law." Id. at *22. Clarke's claim was dismissed as untimely brought.

Other recent cases in this District split on when a selective enforcement claim accrues. See Elozua v. New Jersey, 04-2029, 2008 U.S. Dist. LEXIS 9762, *21 (D.N.J. Feb. 11, 2008)("This Court finds that the Wallace holding does apply to plaintiffs' Fourteenth Amendment selective enforcement claim"); Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety-Division of State Police (Gibson III), No. 02-5470, 2008 U.S. Dist. LEXIS 8713, *9-10 (D.N.J. Feb. 5, 2008) ("[I]n the absence of further guidance from the Third Circuit, this Court continues to hold that because the

Heck rule applies to Plaintiff's claim of selective enforcement of the laws, that claim is not time-barred").

      2.   Selective Enforcement and Equitable Tolling

False arrest arises under the fourth amendment; selective enforcement arises under the fourteenth, and is rooted in equal protection jurisprudence. The Second Circuit characterized selective enforcement as a "murky corner of equal protection law in which there are surprisingly few cases" in Zahra v. Town of Smithfield, 48 F.3d 674, 683 (2d Cir. 1995)(internal quotations omitted). That decision set forth the elements of the claim, which have been cited with approval in this Circuit,[4] as follows:

> (1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person.

Id. at 683.

The recent racial profiling decisions in this District that dismiss the selective enforcement claim task the plaintiffs for failing to support an equitable tolling argument with solid facts. But Dique presents documents that establish that evidence of racial profiling was unavailable until years after his arrest. The Court considers significant the certification of William Buckman, Dique's previous attorney, filed in state court on July 24, 2001, in connection with Dique's motion for post-conviction relief. (Levine Cert. Ex. E.) Buckman states there that evidence related to the State's racial profiling practices was not available prior to the period of 1999 to 2000. "[A]s an attorney in [the racial profiling case of State v. Soto, 324 N.J. Super 66 (Law Div. 1996)] and subsequent challenges on behalf of clients, I had made specific requests for these materials or types of materials and the State had denied the existence of some and refused to provide discovery of others until last

---

[4] See, e.g., Rose v. City of Allentown, 211 Fed. Appx. 133, 139 (3d Cir. 2007); Homan v. City of Reading, 15 F. Supp. 2d 696, 702 (E.D. Pa. 1998).

year." (Buckman Cert. ¶ 4.) He notes that "none of this material was known to litigants such as Mr. Dique until the release of The Interim Report[5] and, more importantly, the release of 90,000 pages of discovery in November 2000." (Buckman Cert. ¶ 5.)

Dique provides the Court with a sampling of these 90,000 pages of discovery. They include an internal memorandum describing the Justice Department inquiry and statistical studies showing profiling in New Jersey (Levine Cert. Ex. F.), an internal memorandum describing several problem areas with the State Police including racial profiling (Levine Cert. Ex. G.), and interviews with troopers describing how they are trained to profile (Levine Cert. Ex. H). Dique argues these documents in particular show a cover-up of the State's racial profiling practices. (Pl. Br. 12; Levine Cert. Exs. F, G, H.) He also attaches a training document used to teach state troopers how to use race to identify possible drug couriers (Levine Cert. Ex. I) and a lesson plan used in state trooper training to teach troopers how to use race to identify members of a "Jamaican posse." (Levine Cert. Ex. J.) These documents support Dique's contention that there was planned and specific selective treatment of certain individuals as compared with others similarly situated based on impermissible grounds—their race.

Accepting Dique's facts and arguments as true, he did not have the information about the State Police's activities necessary to bring a cause of action for selective enforcement at the time of his arrest when the claim accrued. Arguably, Dique did not have information he could examine and act upon until the mass of documents (some 90,000) were analyzed and presented to a court, which at the latest occurred when his attorney filed the July 21, 2001 certification. At that point, Dique's lawyer was telling a state judge that police officers were not prosecuting individuals of a similar race/nationality who were doing the same things Dique was doing when he was stopped, and

---

[5] The Interim Report refers to the Interim Report of the State Police Review Team Regarding Allegations of Racial Profiling published by the New Jersey Attorney General in April 1999. Gibson I, 411 F.3d at 445.

explaining why it took so long to make that case, i.e., the same arguments underlying the federal claim.

In Clarke, the district court held that "the tort action for selective enforcement accrues upon the search and arrest that was allegedly made pursuant to selective enforcement of the law." Id. at *22. This Court agrees. However, based on Dique's showing, this Court also finds that the statute of limitations did not begin to run until later under equitable tolling as defined in both federal and state law. Freeman speaks of equitable tolling as applicable where plaintiff has "in some extraordinary way" been precluded from asserting his rights, 347 N.J. Super. at 31, and Lake v. Arnold includes in its list "other extraordinary circumstances" preventing a claim attributable to the defendants' actions. 232 F.3d at 370. Here, a basis for equitable tolling can be found in the delay in and resistance to putting forward evidence of a deliberate, planned selection of certain individuals but not others for enforcement of the criminal laws in New Jersey.

The Court is aware that arguments can be made that the limitations period for Dique's claim was triggered at various points along the spectrum of racial profiling revelations. Dique argues strenuously, for example, that he should not be tagged with "the Freeman court-imposed burden," referring to the finding in that case that the climate of publicity about racial profiling at the time of Freeman's arrest in June, 1996, meant he was charged with knowledge sufficient to start the limitations period running then. (Pl. Opp. Br. 14-15.) This Court does not have to resolve the debate, however, because here, there can be no question that Dique argued to a state judge in July 2001 that the state actively withheld information vital to the racial profiling argument he was pressing at that point. The same argument is made to this Court in the selective enforcement claim. Dique provides no basis, other than the Heck bar, which is discussed below, to refute the determination that July, 2001 is the latest trigger for the statute of limitations. His lawsuit was filed in February 2004, more than two years later.

    3.   Does Heck Apply?

The Court disagrees with Dique's argument that under "the Heck bar," his cause of action did not accrue until his conviction was vacated in April 2002. Dique reasons that selective enforcement is "directly analogous to the constitutional tort of malicious prosecution" and as such his claim does not accrue until "the entire prosecution and incarceration have concluded." (Pl. Br. at 9.) The argument dispenses with equitable tolling and bundles into the claim the history of his involvement with the criminal justice system that followed his stop and arrest. But this assumes that a conviction and outcome are elements of selective enforcement when, logically, the tort is complete once the victim has been selected out of a discriminatory motive to be the target of the enforcement of a law by the enforcers, here the State Police.

In Wallace, the Court cabined the false arrest claim as beginning with the arrest and ending when legal process is instituted. The Court rejected the theory that the false arrest "set the wheels in motion for [the defendant's] subsequent conviction and detention: The unlawful arrest led to the coerced confession, which was introduced at his trial, producing his conviction and incarceration." 127 S. Ct. at 1096-97. Significantly, the Court saw that "detention after issuance of process or arraignment would be attributable to a tort other than the unlawful arrest alleged in petitioner's complaint—and probably a tort chargeable to defendants other than the respondents here." Id. at 1097. Just so in this case: damages for what evolved attributable to the selective treatment claim sound in a different series of torts, more than likely selective prosecution[6] and malicious prosecution, which have different elements and are chargeable to state actors other than these defendants. See United States v. Armstrong, 517 U.S. 456, 465 (1996).[7]

---

[6] To the extent that both plaintiff and defendants mixed up selective enforcement with selective prosecution, their arguments were not helpful to the Court. See Pl. Opp. Br. 9-11. Def. Resp. Br. 13.

[7] The elements of a selective prosecution claim are a policy (1) that had a discriminatory effect; and (2) was motivated by a discriminatory purpose. See United States v. Armstrong, 517 U.S. 456, 465 (1996). The tort challenges the core "power to prosecute." Id. at 467.

To the extent that Dique is seeking the "the adoption of a principle that goes well beyond Heck: that an action which would impugn an anticipated future conviction cannot be brought until that conviction occurs and is set aside," Wallace, 127 S. Ct. at 1098, his argument fails. Wallace unequivocally banishes the thought: "We are not disposed to embrace this bizarre extension of Heck." Id. The indisputable fact remains that the elements of Dique's claim of selective enforcement were accounted for and the claim accrued when the troopers chose his vehicle to pull over, allegedly motivated by racial considerations.

Selective enforcement attributable to these defendants ended when the events of Dique's subsequent prosecution began, and the limitations period began then as well. The Court considers pinpointing that date as outside its purview here, because the limitations period is deemed equitably tolled. For the reasons expressed above, the Court finds that the latest point at which the limitations period began to run in this case is July, 2001. Dique had until July, 2003, or two years, to file his claim. He did not file his claim until February 9, 2004. Therefore his selective enforcement claim is barred by the statute of limitations.

## **CONCLUSION**

The Court finds that under Wallace, Dique's false arrest claim is barred by the statute of limitations. His selective enforcement claim is also barred by the statute of limitations based on the reasoning above. The Court grants summary judgment in favor of defendants Pagano, Mulvey, and Vona.

Dique's opposition brief raises arguments about his other federal claims, as well as the state claims. The Court will not entertain those arguments or address the claims, which were already dealt with in the Court's dismissal opinion, which is on appeal. The purpose of these motions was to seek summary judgment on the issues returned to the Court on the limited remand.

An appropriate order will be entered.

Dated:  April 23, 2008                                                      /s/ Katharine S. Hayden
                                                                            Katharine S. Hayden
                                                                            United States District Judge